IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **GRRAPHENE PLATFORM, LLC** ) | |
| ) | Case No. 6:25-cv-259 |
| PLAINTIFF, ) | |
| ) | |
| v. ) | |
| ) | **JURY TRIAL** |
| **NANOEXPLORE, INC.** ) | |
| **RMC ADVANCED TECHNOLOGIES, INC.** ) | **DEMANDED** |
| ) | |
| DEFENDANTS. ) | |

## COMPLAINT FOR PATENT INFRINGMENT

Plaintiff GRAPHENE PLATFORM CORPORATION ("GPC" or "Plaintiff") files its Original Complaint for Patent Infringement against Defendants, NANOXPLORE, INC. ("NANOXPLORE") and RMC ADVANCED TECHNOLOGIES, INC. ("RMC") (each individually referred to as Defendant, collectively referred to as "NanoXplore" or "Defendants"), and alleging infringement of U.S. Patent Nos. 9,428,393 (the "'393 patent"); 9,587,134 (the "'134" patent); 9,598,593 (the "'593 patent"); 9,552,900 (the "'900 patent"); 9,815,987 (the "'987 patent"); 9,862,833 (the "'833 patent"); 9,862,834 (the "'834 patent"); 10,421,863 (the "'863 patent"); 9,404,058 (the "'058 patent"); and 9,752,035 (the "'035 patent"); (each a "Patent-in-Suit", collectively the "Patents-in-Suit").

## PARTIES

1. Graphene Platform Corporation is a Japanese corporation with its principal place of business located at 1-15-1 Ebisu-minami, Shibuya-ku, Tokyo 150-0022, Japan.

1

2. Upon information and belief, NanoXplore, Inc. is a Canadian corporation with its principle place of business located at 4500 Thimens Blvd, Montréal, QC H4R 2P2, Canada that sells products throughout North America.

3. Upon information and belief, RMC Advanced Technologies Inc. is a wholly-owned U.S. subsidiary with its principle place of business located at 1400 Burris Road, Newton, North Carolina 28658 that manufactures and distributes products throughout North America.

## JURISDICTION AND VENUE

4. This is an action for patent infringement in violation of the Patent Act of the United States, 35 U.S.C. §§1, *et. seq.*

5. This Court has subject matter jurisdiction over the subject matter of this action against Defendant NanoXplore pursuant to 28 U.S.C. §§ 1331 and 1338(a) because it arises under the Patent Laws of the United States, 35 U.S.C. §§ 101 *et. seq.*

6. This Court has personal jurisdiction over the Defendants because (i) the Defendants are present within or have minimum contact with the State of Texas and this judicial district; (ii) the Defendants have purposefully availed themselves of the privileges of conducting business in the State of Texas and in this judicial district; and (iii) Plaintiff's cause of action arises directly from the Defendants' business contacts and other activities in the State of Texas and in this judicial district.

7. Venue is proper in this District under 28 U.S.C. §§ 1400. The Defendants conduct substantial business in this forum, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; (ii) regularly doing or soliciting business,

engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals and other businesses in Texas and this District.

## FACTUAL BACKGROUND

### A. Graphene Platform Corporation and the Patents-in-Suit

8. Plaintiff Graphene Platform Corporation ("GPC") is a global leader in graphene technology, renowned for its pioneering work in the synthesis, functionalization, and application of high-quality graphene materials. With a robust portfolio of patented technologies and a commitment to enabling next-generation innovations, GPC empowers industries ranging from energy storage and electronics to biomedical devices and advanced composites. Through strategic collaborations with universities, research institutes, and industrial partners, the company continues to drive the commercial adoption of graphene worldwide.

9. Plaintiff holds a strategically developed and internationally filed patent portfolio that reflects its leadership in graphene innovation. The company's intellectual property covers key areas such as graphene synthesis, dispersion technologies, functional coatings, energy storage materials, and biomedical applications. With patents granted in major markets including the U.S., Europe, Japan, and China, Graphene Platform's IP portfolio not only protects its proprietary manufacturing processes and materials but also serves as a critical foundation for licensing, joint development, and commercial partnerships across multiple industries.

### B. The Graphene Grade Index (GG Index)

10. To evaluate and benchmark the quality and performance characteristics of graphene materials across different production methods and applications, Plaintiff has developed

3

the Graphene Grade Index. It incorporates key parameters such as layer number, lateral size, purity, defect density, and conductivity to provide a standardized, quantifiable score that reflects the material's suitability for specific end uses—such as electronics, energy storage, composites, or biomedical applications. By using the GG Index, customers and partners can more easily compare graphene grades, select the right material for their application, and ensure consistent performance across development cycles.

11. The Patents-in-Suit discloses Plaintiff's innovation in which graphene having GG Index of greater than 31% was achieved. This was not possible prior to Plaintiff's innovation disclosed in the Patents-in-Suit.

Graphene Platform's Interaction with NanoXplore

12. On January 1, 2024, GPC contacted NanoXplore to seek collaboration on graphene manufacturing and resell in Japan. In Plaintiff's email to NanoXplore's representative Mr. Pedro Azvedo, Plaintiff mentioned the Patents-in-Suit and also highlighted the fact that the patent portfolio is mostly directed to "products" and "materials", meaning that infringement would be relatively easy to detect via the "GG Index".

13. After several follow-up email inquiries, NanoXplore's CEO, Dr. Sorush Nazarpour, finally responded on March 12, 2024 by declining the collaboration invitation, stating that NanoXplore's focus was in North American market.

14. Plaintiff subsequently engaged an intermediary to negotiate a licensing agreement for its patent portfolio.

15. On January 14, 2025, Plaintiff's representative, LexNovia Venture Studio, emailed NanoXplore to warn NanoXplore of its infringing activities and seeking an amicable resolution through licensing or partnership.

16. On January 30, 2025, Dr. Sorush Nazarpour responded in his email asking Plaintiff to provide supporting documentation for evidence of infringement.

17. On February 25, 2025, after much consideration, Plaintiff again send another invitation to seek amicable resolution only to be met by silence from NanoXplore.

18. On March 19, 2025, after repeated attempts to engage NanoXplore in friendly discussions had failed, Plaintiff emailed NanoXplore a copy of the '393 patent as an example accompanies by a claim chart and lab report of GG Index on NanoXplore's product as evidence of use. In particular, Plaintiff showed that NanoXplore's products GrapheneBlack0X and GrapheneBlack 3X are infringing on at least one claim of the '393.

19. Plaintiff requested NanoXplore to respond by March 30, 2025. To date, NanoXplore has not responded to Plaintiff's request.

C. **Defendant's Infringing Activities and Products**

20. Upon information and belief, NanoXplore has and continues to infringe the Patents-in-Suit by making, using, selling, and offering for sale of Accused Products in the United States and importing into the United States accused products that embody or use the inventions claimed in the Patents-in-Suit. GrapheneBlack0X and GrapheneBlack 3X are industrial graphene powders which made from natural flake graphite by NanoXplore, designed specifically for advance industrial applications, including plastics, composites, and battery materials.

21. Upon information and belief, NanoXplore has known of the existence of the Patents-in-Suit, including the '393 Patent, and its acts of infringement have been willful and in disregard for the Patents-in-Suit, without any reasonable basis for believing that it had a right to engage in the infringing conduct.

## CLAIMS FOR PATENT INFRINGEMENT

### Direct Infringement

22. Plaintiff repeats and realleges the allegations contained in Paragraphs 1 through 29 above as fully set forth herein.

23. Upon information and belief, NanoXplore had actual knowledge of the Patents-in-Suit at least as of its receipt of Plaintiff's email of January 1, 2024.

24. Upon information and belief, Defendant has been and is infringing the Patents-in-Suit by making, using, selling, or offering for sale in the United States, or importing into the United States, including within this judicial district, industrial graphene powders which made from natural flake graphite, in violation of 25 U.S.C. §271(a).

25. To be specific, accused products comprise a graphite-based carbon material derived from natural flake graphite. The Accused Products have both rhombohedral graphite layers (3R) and hexagonal graphite layers (2H). Defendant's Accused Products have rate of the 3R, determined by X-ray diffraction using the Rigaku GG Index, exceeding 31%, therefore directly meeting the limitations stated in the Patents-in-Suit.

26. The claims of the Patents-in-Suit are understandable to a person having ordinary skill in the art who has the requisite education, training, and experience with the technology at issue in this case.

27. A person having ordinary skill in the art understands Plaintiff's theory of how Defendants' Accused Products infringe the claims of the Patents-in-Suuit upon a plain reading of this Complaint, the Patents-in-Suit (**Exhibits A - J**), and the Exemplary Claim Chart for the '393 (**Exhibit K**)

28. Defendants are liable for direct infringement of one or more of the Asserted Claims of the Patents-in-Suit under 35 U.S.C. §271(a).

29. Plaintiff reserves the right to modify its infringement theories as discovery progresses in this case; it shall not be estopped for infringement contention or claim construction purposes by the claim chart that it provides with this Complaint. The Exemplary Claim Chart (**Exhibit K**) is intended to satisfy the notice requirements of Rule 8(a)(2) of the Federal Rule of Civil Procedure; they do not represent Plaintiff's preliminary or final infringement contentions or preliminary or final claim construction positions

### Indirect Infringements

### Induced Infringement

30. Upon information and belief, Defendants actively and knowingly induced another to infringe one or more claims of the Patents-in-Suit and possessed specific intent to encourage such infringement.

31. Despite being notified of infringement of the Patents-in-Suit via Plaintiff's January 1, 2024 email and March 19, 2025 along with the accompanying claim charts, Defendants' continued to offer the Accused Products, among other things.

32. Defendants knew or should have known that its actions would induce actual infringement of the Patents-in-Suit.

33. Defendants are liable for induced infringement of one or more of the Asserted Claims of the Patents-in-Suit under 35 U.S.C. §271(b).

### Contributory Infringement

34. Upon information and belief, Defendants sell, offer to sell and/or import the Accused Products, which is a material part of the claimed invention of the Patents-in-Suit.

35. Upon information and belief, there are no substantial non-infringing uses for the Accused Products.

36. Upon information and belief, at least as of its receipt of Plaintiff's letter of January 1, 2024 and the email of March 19, 2025 along with the accompanying claim chart, Defendants had knowledge that the Accused Products were clearly infringing the claims of the Patents-in-Suit.

37. Upon information and belief, Defendants had contributed to infringement by customers who use the Accused Products.

38. Upon information and belief, Defendants have contributed to and continues to contribute to the infringement by another of one or more of the Asserted Claims of the Patents-in-Suit under 35 U.S.C. §271(c).

## Willful Infringement

39. Upon information and belief, Defendants had actual knowledge of the Patents-in-Suit at least as of its receipt of Plaintiff's email of January 1, 2024, if not sooner.

40. Upon information and belief, upon gaining knowledge of the Patents-in-Suit, it was or became apparent to Defendants that manufacture, use, sale, offer for sale and/or importation of the Accused Products resulted in infringement of the Patents-in-Suit. Notwithstanding its knowledge (or willful blindness thereto), upon information and belief, Defendants continued to manufacture, use, sell, offer for sale and/or import the Accused Products.

41. Defendants have willfully infringed and continues to willfully infringe the Patents-in-Suit.

42. As a direct and proximate cause of the direct infringement, inducement to infringe and contributory infringement by Defendants, the Plaintiff is being and will continue to be substantially and irreparably harmed in its business and property rights unless Defendants are enjoined from manufacturing, importing, offering to sell, selling making, using, offering to sell, selling and/or importing the Accused Products in the United States.

43. In addition, the Plaintiff is suffering injury for which it is entitled to monetary relief as a result of Defendants' direct and willful infringement, inducement to infringe and contributory infringement.

## JURY DEMAND

The Plaintiff hereby requests a trial by jury on issues so triable by right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

a) Declaring that the Patents-in-Suit are valid and enforceable;

b) Declaring that Defendants have infringed and continues to infringe the Patents-in-Suit, under literally or under the doctrine of equivalents, at least one valid and enforceable claim in each of the Patents-in-Suit under 35 U.S.C. §271(a);

c) Declaring that Defendants have induced and continues to induce the infringement of at least one valid and enforceable claim of each of the Patents-in-Suit 35 U.S.C. §271(b);

d) Declaring that Defendants have contributed and continues to contribute to the infringement of at least one valid and enforceable claim of each of the Patents-in-Suit under 35 U.S.C. §271(c);

e)	Declaring that Defendants' infringement is willful, and the Plaintiff is entitled to treble damages under 35 U.S.C. §284 for past infringement;

f)	Awarding the Plaintiff damages adequate to compensate for Defendants infringement, and in no event less than a reasonable royalty for past infringement;

g)	Either (1) permanently enjoining Defendants, its officers, agents, servants, and employees and those persons in active concert or participation with any of them from manufacturing, importing, offering to sell, selling, or using within the United States the Accused Products or (2) awarding damages *in lieu* of an injunction, in an amount consistent with the fact that for future infringement Defendants will be an adjudicated infringer of a valid patent, and trebles that amount in view of the fact that the future infringement will be willful as a matter of law;

h)	Declaring that this is an exceptional case under 35 U.S.C. § 285 and awarding Plaintiff its reasonable attorneys' fees, costs, and expenses, based in part on, but not limited to, Defendants' willful infringement; and

i)	Granting Plaintiff such other and further relief as this Court deems just, proper, and equitable.

DATED: June 21, 2025                          /s/ Matthew Lee, Esq. (I.D# 24095891)
                                              Matthew Lee, ESQ.,
                                              matt@leenaughton.com
                                              **Lee & Naughton, PLLC**
                                              1310 Rayford Park Rd.
                                              Suite 308
                                              Spring, Texas 77386
                                              T: (713) 417-4258